UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No.

| | |
|---|---|
| KATHERINE CORNISH,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION;<br>COMPREHENSIVE HEALTH MANAGEMENT,<br>INC.; and WELLCARE OF NORTH<br>CAROLINA, INC.;<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Katherine Cornish ("Plaintiff" or "Ms. Cornish"), by and through her undersigned counsel, brings this action against Centene Corporation, Comprehensive Health Management, Inc., and WellCare of North Carolina, Inc. (collectively "Defendants"), alleging the following:

## NATURE OF THE ACTION

1. Ms. Cornish brings this action against her former employer for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.

2. Defendants unlawfully interfered with Ms. Cornish's FMLA rights and retaliated against her by negatively counting FMLA-protected medical leave against Ms. Cornish, treating Ms. Cornish with hostility after her medical leave, reducing Ms. Cornish's pay, and, ultimately, forcing Ms. Cornish to resign.

## THE PARTIES

3. Plaintiff Katherine Cornish is an adult individual and resident of Durham, North Carolina.

4. Defendant Centene Corporation ("Centene") is a legal entity incorporated in the state of Delaware, registered to do business in North Carolina, with a principal office located in St. Louis, Missouri.

5. Defendant Comprehensive Health Management, Inc. ("CHM") is a legal entity incorporated in the state of Florida, registered to do business in North Carolina, with a principal office located in Tampa, Florida.

6. Defendant WellCare of North Carolina, Inc. ("WellCare NC") is a legal entity incorporated in the state of North Carolina, with a principal office located in Raleigh, North Carolina.

7. According to public filings with the North Carolina Secretary of State, Defendants Centene, CHM, and Wellcare NC all share at least one common registered officer (Tricia Dinkelman) and all share the same mailing address: 7700 Forsyth Blvd, St. Louis, MO 63105.

8. A 2019 written job offer Ms. Cornish received, for the position she held during the relevant time period of this Complaint, was from "Comprehensive Health Management, Inc., a member of the Wellcare group of companies." Following Ms. Cornish's employment, Defendant CHM held itself out as Ms. Cornish' employer for unemployment proceedings (before the North Carolina Department of Commerce - Division of Employment Security).

9. During the relevant time period of this Complaint, Ms. Cornish's employee handbook, FMLA policies, and compensation statement were provided from "Centene Corporation."

10. Plaintiff is informed and believes that at all relevant times all Defendants (Centene, CHM, Wellcare NC) and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of their employment and/or agency; and that each and every Defendant, while acting as a high corporate officer, director, and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged, and was responsible in whole or in part for the matters referred to herein.

11. Plaintiff is further informed and believes that Defendants, and each of them, are now and/or at all relevant times were members of and/or engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuit of that joint venture, partnership, and common enterprise and, as such, were co-employers of Plaintiff during all relevant times described herein.

12. Plaintiff is further informed and believes that Defendants, and each of them, at all relevant times concurred with, contributed to, approved of, aided and abetted, condoned, and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

## JURISDICTION AND VENUE

13. This action arises under federal statutes, including the FMLA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants conduct business in this district and are subject to personal jurisdiction in this district for the purposes of this action.

## FACTUAL ALLEGATIONS

15. On or about February 20, 2012, Ms. Cornish was hired by Defendants as a Senior Provider Relations Representative for the Florida market. Throughout her ten (10) years of employment with Defendants, Ms. Cornish demonstrated consistent positive performance and was promoted on several occasions.

16. In or about 2014, Ms. Cornish was promoted to Manager, Provider Relations, for the Florida market.

17. In or about 2016, Ms. Cornish was promoted to Senior Manager, Provider Relations, for the Florida market.

18. On or about March 31, 2019, Ms. Cornish was promoted to Director, Provider Relations, for the North Carolina market. Ms. Cornish relocated for this position, which was based out of Defendants' office at 421 Fayetteville St, Suite 1100, Raleigh, NC 27601.

19. Ms. Cornish continued to excel at her new position with Defendants, leading a team of Provider Relations managers and representatives.

20. In annual reviews for 2019 and 2020, Ms. Cornish was rated by her supervisors as meeting or exceeding all job expectations.

21. In or about September of 2021, under advice of her medical provider, Ms. Cornish requested time off work due to her own serious health conditions.

22. From on or about September 24, 2021, through on or about December 15, 2021 (slightly less than 12 weeks), Ms. Cornish was on medical leave of absence from work due to her own serious health conditions (FMLA-protected leave).

23. After returning from her medical leave, Ms. Cornish experienced a pattern of hostility and unfair treatment from top executives of Defendants, including her supervisor, Keith Wadsworth, VP Network Management ("Wadsworth").

24. On or about January 25, 2022, Wadsworth reviewed Ms. Cornish's job performance with her as part of her 2021 annual performance review.

25. Under the goal of "Drive Quality Performance," Wadsworth gave Ms. Cornish a rating of "partially meets expectations," the first negative rating on an annual review Ms. Cornish had received in her position.

26. Defendants' alleged basis for the negative rating focused on the timeliness and management of new provider orientations (aka NPOs) by Ms. Cornish's team, with the review stating in part:

   a. "There is a corporate SLA for Medicare requiring NPOs to be completed within 30 days. Additionally, NC DHB has Medicaid metrics of NPOs completed within 30 days since 7/1. To date the team has not met the metrics."

   b. "The Provider Relations teams was inconsistent in managing their New Provider Orientations (NPO) and documenting their site visits. [Ms. Cornish] will need to ensure her managers are accountable for all things PR within their

regions including managing site visits timely NPOs and responding to providers inquires timely."

27. Defendants' negative rating given to Ms. Corish was pretext for discriminating and retaliating against Ms. Cornish for utlizing her FMLA rights, considering:

   a. Defendants' claimed basis for the negative rating (the timeliness and management of new provider orientations), was covered under another goal <u>in the exact same review</u>, for which Ms. Cornish was graded "Exceeds Expectations": "Complete all new provider orientations within 30 days of the provider's effective date tracking orientation dates and a point of contact to survey on the SharePoint.";

   b. Ms. Cornish repeatedly requested to know which specific provider(s) did not receive a new provider orientation in a timely manner and Defendants were unable to provide any specifics;

   c. Any alleged delays in NPOs would have been a result of network delays from other departments, which Ms. Cornish had no control over;

   d. The "Drive Quality Performance" goal (which received the negative rating) was intended to be judged on objective performance metrics that had nothing to do with NPOs; and

   e. Ms. Cornish and her team actually exceeded the objective performance metrics for the "Drive Quality Performance" goal.

28. Ms. Cornish immediately disputed the basis of the negative rating 2021 annual performance review with Wadsworth (and on the face of the review, under employee comments). Her concerns remained unresolved.

29.     On or about January 27, 2022, Ms. Cornish was unable to attend a work meeting because she was with her husband at the hospital.  Instead of being able to receive medical treatment that day as expected, Ms. Cornish's husband required quadruple bypass surgery and needed to be admitted on February 3, 2022.  Ms. Cornish requested leave from Defendants to care for her husband's serious medical conditions.

30.     From on or about February 3, 2022, through on or about March 4, 2022, Ms. Cornish was on leave from work while caring for her husband's medical conditions.  According to representations from Defendants and their third-party benefits administrator, Ms. Cornish's FMLA leave allotment covered approximately one (1) day of this leave and the rest was covered under Defendants' caregiver leave policy.

31.     After Ms. Cornish returned from her caregiver leave (partially-protected by FMLA), Defendants continued subjecting her to hostility and disparate treatment.

32.     On or about March 9, 2022, Ms. Cornish complained to Ali Schoonover (Senior Director, Human Resource Business Partner; "Schoonover"), about the hostility and unfair treatment she was receiving since being out on leave (first her own and then to take care of her husband).  Ms. Cornish followed-up with a detailed written timeline, including the unjust performance review she received after going out on FMLA-protected leave for her own serious medical conditions at the end of 2021 (described *supra*).

33.     On or about March 15, 2022, Wadsworth and Ms. Cornish met for her annual compensation review.  Ms. Cornish only received 80% of her short term incentive bonus, no long term incentive award (for which she was eligible), and a 2% salary increase.  Ms. Cornish asked Wadsworth why she did not receive her full short term bonus for the year and he said it was based on the "time" she "contributed" to Defendants in 2021 (implying her FMLA-protected

7

leave was the reason she did not receive her full bonus).  Ms. Cornish requested further information regarding the short term bonus and long term incentive award.

34. On or about March 16, 2022, Ms. Cornish complained to Schoonover about the compensation package relayed by Wadsworth.  Schoonover told Ms. Cornish the lower-than-expected bonus was due to the negative rating she received on her annual performance review; Ms. Cornish again explained why the negative rating allegedly based on the NPO process was unjustified (as she had done previously in her written complaint to H.R.).  Schoonover said that she would look into it and if the negative performance rating was not correct, the bonus would be adjusted.

35. On or about March 24, 2022, Ms. Cornish met with Defendants' Human Resources regarding the final outcome of her complaints (described *supra*).  The negative rating on Ms. Cornish's 2021 annual performance review was improved from "partially meets expectations" to "meets expectations."

36. Despite the negative rating being removed from Ms. Cornish's 2021 annual performance review, she still did not receive any additional 2021 incentive bonus.

37. On or about March 25, 2022, Ms. Cornish resigned from Defendants due to the ongoing, unresolved unfair treatment and hostility ever since she took FMLA-protected leave.

## COUNT I
**Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.**
**[1] Interference and [2] Retaliation**

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. At all relevant times, Defendants were an "employer" within the definition of FMLA, 29 U.S.C. § 2611(4)(A).

40. At all relevant times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendants employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendants during the 12-month period preceding the time of her medical leave.

41. Plaintiff suffered a qualifying event under FMLA, requiring leave for her serious medical condition and/or the serious medical condition of her spouse.

42. Plaintiff engaged in protected activity by taking FMLA leave, and by protesting the unlawful violation of her FMLA rights.

43. Upon returning to Defendants following leave, Plaintiff was subjected to hostility and unfair treatment by management.

44. Defendants interfered with Plaintiff's exercise of her FMLA rights and retaliated against Plaintiff for engaging in protected activity under the FMLA by (including, but not limited to) negatively counting FMLA-protected medical leave against Ms. Cornish, treating Ms. Cornish with hostility after her medical leave, reducing Ms. Cornish's pay, and, ultimately, forcing Ms. Cornish to resign.

45. Plaintiff has, and continues to suffer damages because of Defendants' unlawful conduct.

46. Defendants' violation of the FMLA was willful and/or lacking of good faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katherine Cornish demands the following relief:

(1) An Order awarding Plaintiff damages for Defendants' violations of the FMLA, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendants' violation of the FMLA;

(2) An Order awarding Plaintiff liquidated damages for Defendants' violations of the FMLA;

(3) An Order that the costs of this action be taxed against Defendants;

(4) An Order awarding Plaintiff reasonable attorneys' fees;

(5) Pre-judgment and post-judgment interest calculated at the prevailing legal rate;

(6) An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (844) 437-7637; Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com

*Attorney for Plaintiff*